STATE EX REL. TERRY, Petitioner-Appellant, v. PERCY, Respondent.

*No. 75–503. Argued May 2, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 380.)

For the appellant there were briefs and oral argument by *Charles Bennett Vetzner,* Post-Conviction Defense Project of Madison.

For the respondent the cause was argued by *James H. Petersen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Amicus curiae brief of the State Public Defender was filed by *Howard B. Eisenberg,* state public defender.

Amicus curiae brief of Wisconsin Education Association Council was filed by *Bruce Meredith,* staff counsel, of Madison.

Amicus curiae brief of Wisconsin Civil Liberties Union Foundation, Inc., was filed by *William H. Lynch,* cooperating attorney, Wisconsin Civil Liberties Union Foundation, Inc., of Milwaukee.

PER CURIAM. On November 30, 1976, in a published opinion, *State ex rel. Terry v. Schubert,* 74 Wis.2d 487, 247 N.W.2d 109 (1976), this court reviewed an order and judgment of the circuit court for Dodge county which dismissed the writ of habeas corpus by which petitioner Terry sought a discharge from a commitment under ch. 975, Stats., the Wisconsin Sex Crimes Act. The judgment of this court reads as follows:

"Affirmed in part; reversed in part; remanded for entry of order consistent with the declaration of rights as per decision herein and ordering respondent to provide petitioner within a reasonable time a hearing under Sec. 975.09, Stats., which meets the procedure requirements contained herein."

Thereafter the Secretary of the Department of Health and Social Services petitioned the United States Supreme Court for a writ of certiorari to review this court's judgment. By order dated November 3, 1977, the Supreme Court granted the petition, and ordered that the

judgment of the Supreme Court of the State of Wisconsin be vacated and that the "cause be remanded to the Supreme Court of the State of Wisconsin to consider whether its judgment is based upon federal or state constitutional grounds, or both. *See California v. Krivda,* 409 U.S. 33 (1972)." *Percy v. Terry,* 434 U.S. 808, 98 S. Ct. 40 (1977).

Upon receiving the remand order from the United States Supreme Court, we issued an order vacating our judgment of November 30, 1976, directing the Circuit Court for Dodge County to return the record on appeal, and establishing a briefing schedule.

The facts involved in this case were set forth in our original opinion and need not be repeated in detail at this time. Terry was convicted of two counts of rape and one count of theft. Pursuant to the recommendation of the Department of Health and Social Services that Terry was in need of specialized treatment as a sex deviate, the trial court ordered him committed to the department under sec. 975.06, Stats. Terry received an indeterminate five-year sentence on the theft conviction, to be served concurrently with the commitment.

After serving approximately three years at the Wisconsin State Prison, Terry was transferred to Central State Hospital. Sec. 975.08(2), Stats. Subsequent to the mandatory release date on his theft conviction, Terry commenced a habeas corpus proceeding, alleging that he was not suffering mental aberrations due to sexual psychopathy and that continuing his confinement violated his rights.

Sec. 975.11, Stats., provides that the department shall discharge any person committed to it under the Sex Crimes Act "as soon as in its opinion there is a reasonable probability that he can be given full liberty without danger to the public. . . ." Terry challenged the constitutionality of the procedures provided to review

commitment between the time of initial commitment and the expiration of the maximum term of confinement. Sec. 975.09, Stats., provides as follows:

"The department shall make periodic examinations of all persons within its control under s. 975.06 for the purpose of determining whether existing orders and dispositions in individual cases should be modified or continued in force. These examinations may be made as frequently as the department considers desirable and shall be made with respect to every person at intervals not exceeding one year. The department shall keep written records of all examinations and of conclusions predicated thereon, and of all orders concerning the disposition or treatment of every person under its control. Failure of the department to examine a person committed to it or to make periodic examination shall not entitle him to a discharge from the control of the department, but shall entitle him to petition the committing court for an order of discharge, and the court shall discharge him unless it appears in accordance with s. 975.13 that there is necessity for further control."

The trial court dismissed Terry's petition on the ground that it lacked jurisdiction to consider the mental status or treatment needs of one committed as a sex offender during the course of the commitment. The petitioner appealed.

In *State ex rel. Terry v. Schubert*, 74 Wis.2d 487, 247 N.W.2d 109 (1976), this court noted that the department "has shown no formalized procedures which are followed in the periodic examination provided by sec. 975.09." 74 Wis.2d at 496. We concluded that the sex offender's "interest in release from commitment, once the basis for that commitment no longer exists, is clearly a valuable one, the determination for which calls for some orderly procedure." 74 Wis.2d at 497. We held that the following minimal due process rights are applicable to the periodic examination procedures provided by sec. 975.09, Stats.:

". . . (1) written notice of the hearing; (2) disclosure of the evidentiary material which will be considered by the hearing body; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine witnesses, in the absence of good cause for not allowing confrontation; (5) a neutral and detached hearing body; and (6) a written statement by the factfinders as to the evidence relied on and the reasons for refusing parole or discharge. *Morrissey v. Brewer, supra* [408 U.S. 471] at 489." 74 Wis.2d at 502a–502b.

The decision of the department is reviewable by the committing court on certiorari. *Id.* at 498.

The issue on remand is whether the judgment of this court is based upon federal or state constitutional grounds, or both.

Pursuant to the mandate of the United States Supreme Court hereinabove quoted, we have reexamined our opinion in the subject case, have read the briefs filed by the parties and amicus curiae, and have reviewed the record. In reaching our initial decision we acted solely by compulsion of the fourteenth amendment of the federal constitution. Inasmuch as we deem it unnecessary to alter or amend our prior decision, we reiterate and reinstate that decision in its entirety as filed and modified.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* Given this opportunity to review our prior decision, I would base the decision on both the federal constitution and the Wisconsin statutes and constitution. While it is my view that the same conclusion is reached under the fourteenth amendment as under chapter 975 and section 1, article I of the Wisconsin Constitution, I believe we are in any event independently constrained to the result we reached by the Wisconsin statutes and constitution.

Terry and the State both concede that sec. 975.11, Stats., creates a liberty interest benefitting the committee and warranting federal constitutional protection. *See Meachum v. Fano,* 427 U.S. 215, 226, 229 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). In our prior decision we concluded that a person committed under ch. 975 has a liberty interest based on the Wisconsin statutory mandate that he shall be discharged "as soon as in its [the department's] opinion there is a reasonable probability that he can be given full liberty without danger to the public." Sec. 975.11, Stats. The statutes require the department to review the progress and status of the committee, *e.g.,* sec. 975.09, Wis. Stats., and in our prior decision we concluded that the determination whether to continue commitment "calls for some orderly procedure." 74 Wis.2d at 497.

Art. I, sec. 1 of the state constitution provides as follows:

"All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

This section has been viewed by this court as "substantially the equivalent of the due process and equal protection clauses of the 14th amendment of the U. S. Const. . . ." *Buse v. Smith,* 74 Wis.2d 550, 579, 247 N.W.2d 141 (1976). *See Chicago & N.W. Ry. v. La Follette,* 43 Wis.2d 631, 636, 169 N.W.2d 441 (1969); *State ex rel. Sonneborn v. Sylvester,* 26 Wis.2d 43, 49, 132 N.W.2d 249 (1965). Although the federal and state guarantees may be substantially equivalent, this court is not bound to give the Wisconsin Constitution the same interpretive scope as that the United States Supreme Court gives the fourteenth amendment. We have said that "it is the prerogative of the State of Wisconsin to

afford greater protection to the liberties of persons within its boundaries under the Wisconsin Constitution than is mandated by the United States Supreme Court under the Fourteenth Amendment. . . . This court has never hesitated to do so." *State v. Doe,* 78 Wis.2d 161, 171, 254 N.W.2d 210 (1977). *See also State v. Taylor,* 60 Wis.2d 506, 522, 210 N.W.2d 873 (1973); *State v. Wallace,* 59 Wis.2d 66, 79, 207 N.W.2d 855 (1973).

I would rest our decision on the state statutes and the state constitution, as well as the federal constitution, because the Wisconsin legislature has provided detailed commitment and release procedures for sex crime offenders and other committees, *e.g.,* secs. 51.20; 51.37; 971.14 (2), (4), and (5), and 971.17, Wis. Stats., and because this court has interpreted these statutes, taking into consideration the interests of the committee and of the public, to assure meaningful procedural safeguards.

On numerous occasions, this court has demonstrated its commitment to fair administrative procedures. *See e.g., State ex rel. Matalik v. Schubert,* 57 Wis.2d 315, 326–27, 204 N.W.2d 13 (1973); *State ex rel. Haskins v. Dodge County Court,* 62 Wis.2d 250, 262, 214 N.W.2d 575 (1974); *State ex rel. Kovach v. Schubert,* 64 Wis.2d 612, 622–23, 219 N.W.2d 341 (1974), *cert. denied* 419 U.S. 1130 (1975); *State ex rel. Gebarski v. Milwaukee County Circuit Court,* 80 Wis.2d 489, 491, 259 N.W.2d 531 (1977). This court required that a separate sex crimes commitment hearing be held after conviction prior to the United States Supreme Court's imposing the same requirement. *Cf. Huebner v. State,* 33 Wis.2d 505, 147 N.W.2d 646 (1967), with *Specht v. Patterson,* 386 U.S. 605 (1967). The court more recently held that a sex offender was entitled to a jury determination at the initial commitment hearing as well as at the recommitment hearing following expiration of the criminal term. *State ex rel. Farrell v. Stovall,* 59 Wis.2d 148, 207 N.W. 2d 809 (1973).

Sec. 975.09, Stats., requiring periodic examinations of the sex offender and requiring the department to keep written records of all examinations and conclusions predicated thereon, is one of many statutes designed to protect the public from harm from the criminal and to protect the committee from being unjustly institutionalized. The procedures this court has mandated in its decision are necessary to implement in a meaningful way the legislative mandate of periodic examinations and to assure that persons committed under ch. 975 will be institutionalized as long as necessary for their own good and that of the public, but no longer.

The federal constitution assures all persons minimum procedural rights. State laws and the state constitutions can afford additional protections to persons within their boundaries. As Mr. Chief Justice WARREN E. BURGER recently observed,

"In our own time, and in very recent opinions of the [United States] Supreme Court, there are frequent references to the importance of allowing states to experiment and innovate, precisely so that no monolithic, universal system of justice would prevail. The states have far more flexibility; their legislatures are closer to the people and their judges are closer to the people and their problems." Burger, *To Weaken our State Courts is to Destroy Federalism,* 17 Judges' Journal 11, 12 (1978).

I view procedural rights of committees under ch. 975 as an area of the law in which national uniformity is not required and in which each state can formulate procedures to suit its individual needs. I would therefore base our decision on both the federal constitution and the state statutes and state constitution.

I am authorized to state that Mr. Justice Heffernan joins in this concurring opinion.